Filed 1/8/26  State Dept. of State Hospitals v. D.B. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE DEPARTMENT OF STATE HOSPITALS, | F090256 |
| Plaintiff and Respondent, | (Super. Ct. No. 25CRAD687790) |
| v. | |
| D.B., | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Irene A. Luna, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Detjen, J. and Meehan, J.

## INTRODUCTION

Appellant D.B. (appellant), an individual admitted to the State Department of State Hospitals (DSH) at Coalinga (DSH-Coalinga) under the Sexually Violent Predator Act (SVPA), appeals the trial court's order which authorized his involuntary treatment with antipsychotic medications.

On appeal, appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record pursuant to *Conservatorship of Ben C.* (2007) 40 Cal.4th 529. Appellant did not file a supplemental brief on his own behalf. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 9, 2023, appellant was admitted to DSH-Coalinga after being adjudicated by the Fresno County Superior Court as a sexually violent predator (SVP).

On August 14, 2024, the superior court granted DSH's verified petition to involuntarily administer antipsychotic medication to appellant, finding he was an SVP who was unwilling to take medication and he lacked capacity to refuse treatment.[1]

## DSH'S PETITION TO RENEW

On May 5, 2025, DSH filed a verified petition to renew the trial court's prior order to compel involuntary treatment of appellant with antipsychotic medication.

The petition alleged appellant was 51 years old, adjudicated as an SVP, and diagnosed with unspecified bipolar spectrum disorder. His symptoms included, but were not limited to, paranoia, hallucinations, delusions, poor insight and judgment, depression, severe mood swings, decreased need for sleep, increased energy, elevated mood,

---

[1] Appellant filed an appeal from the trial court's involuntary medication order. However, the order expired while his appeal was pending and this court dismissed the appeal as moot. (*State Department of State Hospitals v. D.B.* (Oct. 28, 2025, F088542) [nonpub. opn.].)

hypersexual behavior, rapid and incoherent speech, disorganized behavior and thoughts, and aggressive behaviors towards others.

The petition further alleged appellant had a significant and chronic history of mental illness dating back to the 1990s. He was admitted to a mental health crisis bed at least 23 times from 2001 to 2022. While incarcerated at the Department of Corrections and Rehabilitation (CDCR) between 2003 and 2004, "he was observed licking feces from his cell window, drinking his own urine, and licking his finger after inserting it into his rectum. In addition, he reported being suicidal on at least six occasions and was placed in five-point restraints after he attempted to jump headfirst off his bunk, requiring correctional officers to use pepper spray to intervene." Appellant was treated with involuntary antipsychotic medication in 2004, and from 2021 to 2022.

The petition alleged appellant continued to demonstrate lack of insight, and insisted he did not suffer from a mental illness and did not need to take antipsychotic medication. Appellant was unable to understand the nature and severity of his condition, and repeatedly denied experiencing symptoms of a mental illness "despite his chronic history of mental illness." "When staff attempts to discuss his treatment with him, he makes statements such as, 'I don't believe in mental illness or psych meds,' that he does not believe medication would benefit him in any way, that he is 'anti-science because science is anti-God,' and that he would stop taking his medication if a court order is not in place." Appellant was resistant to medication changes, or dosage adjustments of his current medication.

DSH's petition concluded appellant was unable to understand the benefits and risks of taking or not taking his medication, which was a product of his lack of insight. DSH requested the court appoint counsel for appellant, and issue an order for DSH to administer appropriate antipsychotic medication to appellant for one year, in the dosage and frequency deemed necessary by DSH. The court appointed counsel for appellant.

3.

## EVIDENTIARY HEARING

On August 1, 2025, the trial court conducted an evidentiary hearing on DSH's petition. Appellant and his counsel appeared by teleconference. There were two witnesses: Dr. Basant Singh appeared for DSH, and appellant testified on his own behalf.

### Dr. Singh[2]

Dr. Singh, an on-site psychiatrist at DSH-Coalinga, had been appellant's psychiatrist since June 2025. He met with appellant in person approximately twice a month, for a total of four or five times.

Dr. Singh diagnosed appellant with unspecified bipolar disorder. When appellant was not on medication, his symptoms consisted of insomnia, irritable mood, grandiose thinking, bizarre and disorganized behavior, sexually inappropriate behavior, and high energy.

At the time of the hearing, appellant was taking 10 milligrams of Abilify, which was the least restrictive alternative and dosage. While on this low dosage, he still displayed subtle symptoms of his mental illness.

Appellant had a history of refusing medication, decompensating, and "fall[ing] [a]part." He was placed on an involuntary medication order when he was in prison from July 2020 until September 2021. Even on medication, however, appellant still displayed lack of insight, totally denied having any mental illness, claimed he did not need any medication, and said he was going to stop taking medication as soon as the court order expired.

Dr. Singh testified he repeatedly tried to discuss appellant's mental illness with him in a gentle manner. Each time, appellant said there was no chance that he had one.

---

[2]     The parties stipulated to Dr. Singh's expertise.

Appellant said his past aggressive acts were justified because he was acting against the "Anti-Christ" and he was trying to defend himself.

Dr. Singh testified appellant was evaluated for any side effects of the medication, and appellant said he did not have any. Instead, appellant insisted that he did not need medication and it did not benefit him. At one point, appellant had been able to persuade another doctor to lower and then end the medication, and he decompensated.

Dr. Singh testified to his opinion that appellant lacked the capacity to make decisions regarding the administration or dosage of antipsychotic medication, and he would not take the proper dosage without the court issuing an involuntary medication order.

**<u>Appellant</u>**

Appellant acknowledged he was Dr. Singh's patient but testified he had only seen him three times, with the final visit occurring the day before the hearing. Appellant testified Dr. Singh asked if he had a mental illness and needed medication. Appellant said no. Appellant testified that a mental illness meant a person has mental issues that need to be controlled with medication. He knew Dr. Singh diagnosed him with unspecified bipolar disorder, which meant someone suffered from "polar opposites," with extreme highs and lows, euphoria, and depression, and "unspecified" meant something that doctors cannot pinpoint.

Appellant testified he had been misdiagnosed, he did not display symptoms of mental illness, and he showed "spiritual" behaviors because he had strong religious beliefs and liked to loudly sing gospel songs that evidently disturbed other people at DSH. Appellant denied displaying any of the symptoms described by Dr. Singh, such as increased energy and sexual hyperactivity. He denied telling Dr. Singh that he had aggression related to Christ or the Anti-Christ.

Appellant testified he was taking Abilify, he did not get any benefit from it, and he only took it because he was forced to. If the involuntary medication order was removed,

he would tell Dr. Singh to wean him off it. Dr. Singh never asked him about side effects of the medication. Appellant told Dr. Alisha Smith and Dr. Imran Hasan that he had side effects of weight gain, constipation, and swollen shins.

Appellant was first told he had a mental illness in 1995 when he was in the Youth Authority. He went to prison in 1998 and was again told he had a mental illness. In 2003 or 2004, an involuntary medication order was issued while he was in prison because of his "spiritual" acts. Such an order was again issued in 2020 and 2021. Appellant denied the allegation that he drank urine and licked feces off a wall; he claimed he only sniffed the feces in his cell.

Appellant denied that he attempted suicide in prison by jumping headfirst from his bunk. He pretended to attempt suicide so he would be sent to the prison's crisis unit, and get away from gang activities by other inmates and even the staff in the regular prison area because they targeted sex offenders.

## The Trial Court's Order

On August 1, 2025, the trial court filed an order that found appellant was an adjudicated SVP or committed pursuant to the SVPA, and unwilling to take antipsychotic medication. The court found by clear and convincing evidence that appellant lacked capacity to refuse treatment, and ordered appellant to be involuntarily administered antipsychotic medication by DSH in the dosage and frequency deemed necessary by DSH's clinical staff, for the period of time not to exceed one year from the date of the order.

On August 5, 2025, appellant timely filed a notice of appeal.

## DISCUSSION

As noted above, appellate counsel filed a brief with this court pursuant to *Ben C*. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. On October 23, 2025, this court advised appellant by letter that

6.

he could file a supplemental letter or brief raising any arguable issues. Appellant did not do so.

"[N]onprisoners in California have a statutory right to refuse long-term treatment with psychotropic drugs absent a judicial determination that they are incompetent to do so." (*Keyhea v. Rushen* (1986) 178 Cal.App.3d 526, 541.) " '[A]n [SVP] can be compelled to take antipsychotic medication in a nonemergency situation only if a court, at the time the [SVP] is committed or recommitted, or in a separate proceeding, makes one of two findings: (1) that the [SVP] is incompetent or incapable of making decisions about his medical treatment; *or* (2) that the [SVP] is dangerous within the meaning of … [Welfare and Institutions Code] section 5300.… The rights of [SVP's] to refuse medication can be further limited by State Department of Mental Health Regulations necessary to provide security for inpatient facilities.' " (*In re Calhoun* (2004) 121 Cal.App.4th 1315, 1322.)

"The superior court shall determine competence to refuse treatment by clear and convincing evidence, 'so clear as to leave no substantial doubt, [and] sufficiently strong to command the unhesitating assent of every reasonable mind.' [Citation.] A judicial determination of competency to refuse treatment involves consideration of three factors: (1) whether the patient is aware of his situation and acknowledges the existence of his condition; (2) whether the patient understands the benefits and risks of treatment, as well as alternatives to treatment; and (3) whether the patient is able to understand and evaluate the information required to be given to patients whose informed consent is sought and participate in the treatment decision by rational thought processes. [Citation.] 'We review an order authorizing involuntary administration of antipsychotic medication for substantial evidence.' " (*State Dept. of State Hospitals v. J.W.* (2018) 31 Cal.App.5th 334, 343–344.)

The trial court's findings herein are supported by substantial evidence.  After independent review of the record, we find no reasonably arguable factual or legal issues exist.

## DISPOSITION

The trial court's order of August 1, 2025, is affirmed.